NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GLEN RIDGE SURGICENTER, LLC, | : |
| Plaintiff, | : |
| V. | : Civil Action No. 08-6160 (JAG) |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC., | : **OPINION** |
| Defendant. | : |

**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on the motion to dismiss the Complaint by Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Defendant" or "Horizon") for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6) against Glen Ridge SurgiCenter, LLC ("Plaintiff" or "GRS"). For the reasons set forth below, this motion will be granted, in part, and denied, in part.

### I. FACTUAL BACKGROUND

Glen Ridge SurgiCenter is a limited liability company organized and existing under the laws of the State of New Jersey, having its principal place of business at 230 Sherman Avenue, Glen Ridge, New Jersey. (Compl. at ¶ 4.) GRS is an ambulatory surgical center engaged in the business of providing ambulatory surgical services to patients. (Id.) GRS does not have a license

issued by New Jersey's Department of Health and Senior Services.  (Id. at ¶ 5.)

Horizon is a non-profit corporation organized and existing under the laws of the State of New Jersey, having its principal place of business at Three Penn Plaza East, Newark, New Jersey.  (Id. at ¶ 7.)  Horizon is engaged in the business of providing health insurance coverage, administration of health benefits plans, and related services.  (Id.)  Under the terms of certain of Horizon's policies, patients who are covered under plans that Horizon administers are entitled to payment from Horizon for a portion of the cost of services obtained from providers who are not participants in Horizon's network.  (Id. at ¶ 8.)  The policies that allow patients to receive payment from Horizon for services received from out-of-network providers generally require the subscriber to pay higher premiums than policies that allow patients to receive services only from providers who are participants in Horizon's network.  (Id.)

GRS is not a participating provider in Horizon's network.  (Id. at ¶ 9.)  GRS does not have a contract with Horizon setting forth the terms under which Horizon will make payments to GRS for services that GRS provides to patients who are covered under plans that Horizon administers.  (Id.)  GRS, as an out-of-network provider with respect to Horizon, provides services to patients whose Horizon policies allow them to receive services from providers who do not participate in Horizon's network. (Id.)

When a patient who is covered under a plan that Horizon administers seeks to receive services, GRS initiates telephone communication with Horizon concerning the patient's insurance coverage.  (Id. at ¶ 12.)  The topics GRS discusses with Horizon include:  the existence, nature, and extent of the patient's out-of-network coverage; whether specific procedures are covered under the applicable insurance policy; the amounts of applicable co-

payments and deductibles; pre-existing conditions; whether the patient has satisfied applicable requirements for authorizations or referrals, such as authorizations from Horizon or referrals from a primary care physician, without which (when required) GRS will not go forward with a procedure; and other issues concerning the patient's insurance coverage.  (Id.)

Every patient who is covered under a Horizon policy assigns to Glen Ridge SurgiCenter benefits to which the patient is entitled under a Horizon policy, including (but not limited to ) the right to receive directly from Horizon payments to which the patient is entitled under the terms of the policy.  (Id. at ¶ 13.)  Shortly after providing medical services to a patient who is covered under a plan that Horizon administers, GRS (through its billing contractor, MBAC) submits to Horizon a claim for reimbursement.  (Id. at ¶ 14.)

As to small employer health benefits plans and large employer health benefits plans, Horizon often responds to claims submitted by GRS by sending payment to the patient (which GRS then undertakes to collect form the patient), but in some instances Horizon has made payment directly to GRS.  (Id. at ¶ 15.)  As to health benefits plans sponsored by the State of New Jersey and administered by Horizon, Horizon responds to the vast majority of the claims submitted by GRS by sending payment (with accompanying paperwork) directly to GRS, in the form of checks payable to GRS. (Id. at ¶ 16.)  Horizon has made such direct payments to Glen Ridge SurgiCenter for many years.  (Id.)

From the time that Glen Ridge SurgiCenter began its interactions with Horizon through approximately October 2004, Horizon had made direct payments to GRS on patients' claims that GRS had submitted directly to Horizon.  (Id. at ¶ 18.)  In or about October 2004, the amounts of the payments that Horizon makes to GRS abruptly decreased.  (Id.)  As to small employer health

3

benefits plans and large employer health benefits plans, Horizon now pays GRS much less than the actual charges that Glen Ridge SurgiCenter bills, and much less than the reasonable and customary charges for the services rendered. (Id. at ¶ 19.) As to health benefits plans sponsored by the State of New Jersey, Horizon now pays GRS much less than the reasonable and customary charge. (Id.)

GRS received assignments of benefits from patients who are insured under an ERISA plan administered by Horizon. (Id. at ¶ 35.) The assignments of benefits that GRS received from patients who are insured by Horizon confers upon GRS the status of a "beneficiary" under § 502(a) of ERISA. (Id. at ¶ 36.) As a beneficiary under § 502(a) of ERISA, GRS is entitled to recover benefits due to GRS and/or the patients, under the terms of the plan between the patients and Horizon. (Id. at ¶ 37.) As a beneficiary under § 502(a) of ERISA, Glen Ridge SurgiCenter is entitled to enforce the rights of GRS and/or the patients, under the terms of the plan between the patients and Horizon. (Id. at ¶ 38.) In violation of ERISA, Horizon failed to make payments of benefits to GRS and/or the patients who made the assignments of benefits, under the terms of the plan between the patients and Horizon. (Id. at ¶ 40.)

Plaintiff filed a Complaint in the District of New Jersey on December 15, 2008. Plaintiff seeks to recover increased reimbursement for services from Horizon as an alleged assignee of benefit plans sponsored by private employers under ERISA. Specifically, Plaintiff requests damages, restitution, as well other declaratory and injunctive relief against Horizon in order to enforce the terms of the benefit plans. Plaintiff alleges in its three count Complaint that Defendant failed to honor the terms of the patient benefit plans, which had been assigned to GRS, in violation of § 502 of ERISA (Count I); Breach of fiduciary duties owed to GRS under §

4

502 of ERISA (Count II); and Breach of the duty of good faith under New Jersey law as to Horizon's administration of health benefits plans sponsored by the State of New Jersey (Count III).[1]

## II. STANDARD OF REVIEW

### A. The Standard of Review for a Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 (internal citations omitted); see also FED. R. CIV. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (internal citations omitted). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1357 at 340 (2d ed. 1990)).

---

[1] By a Stipulation and Consent Order, dated April 20, 2009 (Docket Entry No. 15), Plaintiff voluntarily dismissed Count III of the Complaint, without prejudice.

A court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994); see also Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 n.8 (3d Cir. 1997). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

A Rule 12(b)(6) motion to dismiss should be granted only if the plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." Twombly, 127 S. Ct. at 1974; see also In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397 (3d Cir. 2000) (stating that a complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim).

In reviewing a motion to dismiss, pursuant to Rule 12(b)(6), a court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); see also 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1357 (3d ed. 2007). "Plaintiffs cannot prevent a court from looking at the

6

texts of the documents on which [their] claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). "[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Id. (emphasis in original) (quoting Shaw v Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)). Any further expansion beyond the pleading, however, may require conversion of the motion into one for summary judgment. FED. R. CIV. P. 12(d).

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." Ashcroft v. Iqbal et al., 129 S.Ct. 1937, 1950 (2009).

### III. ANALYSIS

#### A. Plaintiff's First Cause of Action

Horizon contends that GRS lacks standing to sue under ERISA because GRS does not hold a valid assignment of benefits. To support this argument, Horizon points to an anti-assignment provision in its plans, which prohibits an insured from assigning to non-participating providers his right to benefits. (Def. Br. at pp. 7-8.) GRS does not deny the presence of an anti-assignment provision in these plans, but asserts that Horizon waived its ability to enforce the anti-assignment provision as a result of its course of dealings with GRS. (Pl. Br. at pp. 14-15.)

Parties may contractually opt against recognizing an assignment of benefits. Renfrew

Ctr.v. Blue Cross and Blue Shield of Central New York, Inc., 1997 WL 204309, at *3 (N.D.N.Y. 1997). At present, the Third Circuit has not ruled on whether anti-assignment provisions in health care plans are enforceable. Some courts have held that the presence of an unambiguous anti-assignment provision in a plan may preclude an insured from assigning their benefits to a health care provider. See, e.g., LeTourneau Lifelike Orthotics & Prosthetics, Inc. v. Wal-Mart Stores, Inc., 298 F.3d 348, 352 (5th Cir. 2002); Wayne Surgical Ctr. v. Concentra Preferred Systems, Inc., 2007 WL 2416428, at *4 (D.N.J. 2007); Physicians Multispecialty Group v. Health Care Plan of Horton Homes, Inc., 371 F.3d 1291, 1296 (11th Cir. 2004); Briglia v. Horizon Healthcare Svcs., Inc., No. 03-6033, 2005 WL 1140687, at *4-5 (D.N.J. May 13, 2005). Therefore, the presence of an anti-assignment provision in the Horizon plans at issue could negate GRS's standing to sue Horizon for unpaid benefits, unless GRS submits evidence demonstrating that the anti-assignment provision is unenforceable.

GRS asserts that, even if ERISA permits the enforceability of anti-assignment provisions, Horizon should be precluded, under a theory of waiver, from enforcing the anti-assignment provision. A waiver occurs when a party performs an act that voluntarily, knowingly, and intentionally relinquishes a known right. See County of Morris v. Fauver, 707 A.2d 958, 970 (citations omitted). A party may waive an anti-assignment provision "by a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee." Garden State Bldgs., L.P. v. First Fid. Bank, N.A., 702 A.2d 1315, 1322 (N.J. Super. Ct. App. Div. 1997), cert. denied, 707 A.2d 153 (N.J. 1998).

GRS describes a course of dealing between itself and Horizon that allegedly constitutes a waiver of the anti-assignment provision and estops Horizon from disavowing GRS's standing.

The conduct includes discussions of patient coverage under health care policies, direct submission of claim forms, and direct reimbursement of medical costs.  GRS described their course of dealing in great detail in the Complaint: "When a patient who is covered under a plan that Horizon administers seeks to receive services, GRS initiates telephone communication with Horizon concerning the patient's insurance coverage.  The topics GRS discusses with Horizon include:  the existence, nature, and extent of the patient's out-of-network coverage; whether specific procedures are covered under the applicable insurance policy; the amounts of applicable co-payments and deductibles; pre-existing conditions; whether the patient has satisfied applicable requirements for authorizations or referrals, such as authorizations from Horizon or referrals from a primary care physician, without which (when required) GRS will not go forward with a procedure; and other issues concerning the patient's insurance coverage." (Complaint at ¶ 12.)

Horizon contends that its direct payment of reimbursements to GRS conforms with the terms of the plans at issue, is required by state law, and thus cannot constitute a waiver.  (Def. Br. at p. 8.)  Although Horizon's direct payments to GRS would not constitute a waiver if authorized under the Horizon plans at issue, see Zhou v. Guardian Life Ins. Co. of Am., No. 01-4816, 2001 WL 1631868, at *2 (N.D. Ill. Dec. 17, 2001); Renfrew Ctr., 1997 WL 204309, at *4, the Complaint alleges a course of conduct beyond direct reimbursement for medical services.

The Complaint describes regular interaction between Horizon and GRS prior to and after claim forms are submitted, without mention of Horizon's invocation of the anti-assignment clause. (Complaint at ¶¶ 12-14.)  Such actions impede Horizon's ability to rely on the anti-assignment provision to challenge GRS's standing.

Defendant's motion to dismiss Count I of Plaintiff's Complaint is denied.

9

### B. Plaintiff's Second Cause of Action (Breach of Fiduciary Duty)

Horizon asserts that this Court should dismiss the breach of fiduciary duty claim set forth in the Complaint because Horizon is not a fiduciary within the meaning of ERISA. ERISA defines a fiduciary as a person or entity that "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . [or holds] any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A); see also Briglia v. Horizon Healthcare Svcs., Inc., No. 03-6033, 2005 WL 1140687, at *6 (D.N.J. May 13, 2005).

The Third Circuit has emphasized that "the linchpin of fiduciary status under ERISA is discretion." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994). However, if Horizon performs mostly ministerial or administrative tasks, such as claims processing and calculation, it likely will not be found to constitute a fiduciary under ERISA. Id. Here, GRS alleged in the Complaint that "As fiduciary of group health plans under ERISA, Horizon owes the beneficiaries of such plans a duty of care, defined as an obligation to act prudently, with the care, skill, prudence and diligence that a prudent administrator would use in the conduct of an enterprise of like character. Further, ERISA § 404(a)(1)(B) and (D), 29 U.S.C. § 1104(a)(1)(B ) and (D) require fiduciaries to ensure that they are acting in accordance with the documents and instruments governing the plan." (Complaint at ¶ 49.)

However, proof of Horizon's fiduciary status is an element of the fiduciary duty claim, and "a formulaic recitation [in the complaint] of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965. The Complaint alleges no facts supporting a finding that Horizon

is a fiduciary, but instead states a legal conclusion that this Court is not bound to accept as true. As a result, this Court will dismiss Plaintiff's breach of fiduciary duty claim contained in Count II of the Complaint, without prejudice.

## IV. CONCLUSION

Based on the foregoing, Defendant's motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6) is granted, in part, and denied, in part.

 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.

Date: September 30, 2009