# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

GLEN RIDGE SURGICENTER, LLC,
*individually and on behalf of all others
similarly situated,*

                    Plaintiffs,

v.

HORIZON BLUE CROSS BLUE SHIELD
OF NEW JERSEY,

                    Defendant.

CIVIL ACTION NO.:
08-cv-6160 (JLL)

---

## MEMORANUDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## TO AMEND THE COMPLAINT

---

**Bruce Nagel**
**Robert H. Solomon**
**NAGEL RICE, LLP**
**103 Eisenhower Parkway**
**Roseland, New Jersey 07068**
**(973) 618-0400**

**Thomas A. Gentile**
**Neil L. Prupis**
**LAMPF LIPKIND PRUPIS & PETIGROW**
**80 Main Street**
**West Orange, New Jersey 07052**
**(973) 325-2100**
**Attorneys for Plaintiffs**

Plaintiffs respectfully submit this memorandum of law in support of their motion to amend the complaint in this class action to designate North Jersey Ambulatory Surgery Center, LLC ("North Jersey Ambulatory Surgery Center") to serve as the representative plaintiff in the stead of Glen Ridge SurgiCenter, LLC ("Glen Ridge SurgiCenter").  Plaintiffs so move pursuant to Federal Rule of Civil Procedure 15(a)(2), which dictates that "the Court should freely give leave [to amend a pleading] when justice so requires."

## PRELIMINARY STATEMENT

Defendant Horizon Blue Cross Blue Shield of New Jersey, Inc. ("Horizon") has come across what it believes to be a great idea: to end this class action (after six years of litigation and settlement negotiations) simply by strong-arming the representative plaintiff, Glen Ridge SurgiCenter, into releasing its individual claims.  Horizon has done so by abusing discussions with Glen Ridge SurgiCenter concerning participating provider status, which Glen Ridge SurgiCenter has desired since long before commencing this action.  Into such discussions Horizon (without informing Glen Ridge SurgiCenter's counsel in this action) thrust an absolute demand that Glen Ridge SurgiCenter must release its claims, or else Horizon would not allow Glen Ridge SurgiCenter to become a participating provider.  Despite Glen Ridge SurgiCenter's repeated retorts that it desires to continue to serve as the representative plaintiff in this class action, Horizon persisted in pressuring Glen Ridge SurgiCenter for a release.  Twice on the eve of status conferences at which this Court might consider whether Horizon's conduct was improper, Horizon has given Glen Ridge SurgiCenter ultimatums to sign the release before the conference, or be permanently denied participating provider status.

Glen Ridge SurgiCenter expects that it will accede to Horizon's demands, and Horizon contends that the resulting mootness of Glen Ridge SurgiCenter's individual claims will moot

this class action.  Although dismissal of a class action upon the mootness of the representative plaintiff's individual claims is the general rule, the United States Court of Appeals for the Third Circuit recognizes a critical exception that is directly applicable to this case.  In the seminal case of <u>Weiss v. Regal Collections</u>, 385 F.3d. 337 (3rd Cir. 2004), the Court of Appeals held that when a defendant in a class action (such as Horizon here) "picks off" the representative plaintiff by satisfying its individual claim, the mootness doctrine will not operate to end the class action. This Court should apply the <u>Weiss</u> doctrine to hold that Horizon's arm-twisting of Glen Ridge SurgiCenter into releasing its claims cannot bring about the end of this class action.  Specifically, prior to entering any dismissal concerning Glen Ridge SurgiCenter's individual claims, this Court should grant to the Plaintiffs leave to amend their complaint to designate a substitute representative plaintiff, North Jersey Ambulatory Surgery Center.

## STATEMENT OF FACTS AND APPLICABLE PROCEDURAL HISTORY

In this action the Plaintiffs seek to recover from Horizon the full amount of payments that Horizon, under the terms of applicable health benefits plans, is required to make to the Plaintiffs for services that the Plaintiffs provided to patients covered under plans that Horizon administers. The Plaintiffs are out-of-network ambulatory surgical centers in New Jersey.  In response to an abrupt decrease in October 2004 in the amounts of the payments that Horizon makes to the Plaintiffs, three out-of-network ambulatory surgical centers commenced three separate actions against Horizon.  Following discovery that revealed details of how Horizon illegally reduced those payments, counsel for Horizon and counsel for the Plaintiffs engaged in more than two years of settlement negotiations.  The three separate actions were consolidated for purposes of settlement.  The settlement negotiations produced a settlement agreement, which the parties executed and which received the preliminary approval of Magistrate Judge Madeline Cox Arleo

of this Court.  The settlement did not, however, come to fruition.  More than ten percent of the class members chose to opt out of the settlement.  Under the settlement agreement's terms, this gave Horizon the right to terminate the settlement agreement, which Horizon did.

With the settlement agreement terminated, the Plaintiffs returned to active litigation.  On May 25, Magistrate Judge Arleo deconsolidated the three actions.  On that same day, Magistrate Judge Arleo granted the Plaintiffs' motion for leave to amend the complaint to include detailed factual allegations concerning Horizon's illegal conduct and to designate Glen Ridge SurgiCenter as the representative plaintiff in this class action.  Magistrate Judge Arleo also granted the Plaintiffs' motion to conduct certain discovery (specifically, depositions of Horizon personnel and of a consultant that Horizon had engaged), which the Court agreed were necessary in order for the Plaintiffs to prepare a motion for class certification to be filed later this year.

The Plaintiffs now seek leave to amend the complaint in this class action to substitute North Jersey Ambulatory Surgery Center as the representative plaintiff, in the stead of Glen Ridge SurgiCenter.  This substitution has become necessary because of a settlement that Glen Ridge SurgiCenter is on the verge of entering into with Horizon.  Under the terms of the pending settlement, (1) Horizon and Glen Ridge SurgiCenter will enter into a participating provider agreement, pursuant to which Glen Ridge SurgiCenter will become a participating provider in Horizon's network; (2) Horizon will pay Glen Ridge SurgiCenter $112,000.00; and (3) Glen Ridge SurgiCenter will release all claims against Horizon.  The circumstances under which Horizon brought about this settlement are crucial to Plaintiffs' motion to amend the complaint.

As Carey Smith, the Administrator of Glen Ridge SurgiCenter, testifies in his accompanying Certification, Glen Ridge SurgiCenter desired to become a participating provider in Horizon's network long before Glen Ridge SurgiCenter commenced this action against

Horizon. See Nagel Cert.[1] Ex. B ¶ 2. Several years ago, Jonathan Reese (who is a contracting manager for Horizon) visited Glen Ridge SurgiCenter to discuss with Mr. Smith the possibility of Glen Ridge SurgiCenter becoming a participating provider. See id. Mr. Reese at that time made an offer of terms of a proposed in-network arrangement for Glen Ridge SurgiCenter. See id. Those terms were not satisfactory to Glen Ridge SurgiCenter.

From that time through the present, Glen Ridge SurgiCenter has at all times desired to become a participating provider in Horizon's network. See id. ¶ 3. By May of this year, principals of Glen Ridge SurgiCenter had decided that changes in the business climate (specifically, Horizon's increasing dominance in the market for health insurance in New Jersey) necessitated that Glen Ridge SurgiCenter become a participating provider in Horizon's network. See id. ¶ 4. At that time Mr. Smith contacted Mr. Reese to discuss the possibility of Glen Ridge SurgiCenter becoming a participating provider in Horizon's network.

In response to Mr. Smith's inquiry about the possibility of Glen Ridge SurgiCenter becoming a participating provider, Mr. Reese told Mr. Smith that Horizon would allow Glen Ridge SurgiCenter to go in-network only if Glen Ridge SurgiCenter released its claims against Horizon in this class action. See id. ¶ 5. Mr. Smith told Mr. Reese that Glen Ridge SurgiCenter desired to continue in its role as the representative plaintiff in this class action. See id. Mr. Reese insisted to Mr. Smith that unless Glen Ridge SurgiCenter released its claims in this action, Glen Ridge SurgiCenter could not go in-network. See id.

Horizon thrust upon Glen Ridge SurgiCenter the idea of a release of its claims in this class action without involving the attorneys who represent Glen Ridge SurgiCenter in this class action. See Nagel Cert. ¶ 4. Despite repeated admonitions from Glen Ridge SurgiCenter's

---

[1] "Nagel Cert." refers to the Certification of Bruce H. Nagel in support of this motion, dated July 14, 2011, which the Plaintiffs submit to the Court contemporaneously with this memorandum of law.

counsel to conduct only through attorneys any discussions of a possible settlement of Glen Ridge SurgiCenter's claims this class action, Horizon persisted in dispatching its contracting personnel to obtain a release from Mr. Smith.  See id.  When Glen Ridge SurgiCenter's counsel raised in a conference call with Horizon's counsel the issue of whether it might be improper for Horizon to seek a release from Mr. Smith without involving Glen Ridge SurgiCenter's counsel, one of Horizon's attorneys starkly admitted that Horizon "wouldn't have him in network" until the opportunity to obtain a release arose.  See id.

Meanwhile, Mr. Smith for several weeks attempted to negotiate with Mr. Reese the amount of a payment that Horizon would make to Glen Ridge SurgiCenter in exchange for the release of claims upon which Horizon was insisting.  See Nagel Cert. Ex. B ¶ 6.  Mr. Reese was unwilling to offer Glen Ridge SurgiCenter an amount that Mr. Smith felt was commensurate with the value of the claims that Glen Ridge SurgiCenter would be releasing.  See id.

Mr. Smith again told Mr. Reese that Glen Ridge SurgiCenter desired to become a participating provider without releasing its claims in this class action.  See id.  Mr. Reese responded by continuing to increase the pressure on Glen Ridge SurgiCenter to release its claims in this class action.  See id. ¶ 7.  Mr. Smith grew uncertain as to whether it would be appropriate for him to release the claims (as Horizon insisted) under these circumstances.  See id.  Having been ordered to appear at a status conference that this Court had scheduled for Wednesday, July 13, Mr. Smith hoped that the Court might then provide guidance on this question.  See id.  In a transparent attempt to strong-arm Glen Ridge SurgiCenter into releasing its claims before the Court could consider these issues at the July 13 status conference, Mr. Reese on July 7 sent Mr. Smith an e-mail that said, "It is my understanding that on Wednesday morning the attorneys

along with a representative from Glen Ridge are ordered to appear in court at 10:00 AM.  It is our expectation that we would have this wrapped up and completed before then." Id.

Glen Ridge SurgiCenter still desires to continue in its role as representative plaintiff in this class action.  See id. ¶ 8.  However, since Horizon has expressly conditioned participating provider status on Glen Ridge SurgiCenter immediately releasing its claims in this class action, Glen Ridge SurgiCenter intends to accede to such a release upon complete review of the applicable settlement documentation and participating provider agreement.  See id.  Counsel for Glen Ridge SurgiCenter explained this to Magistrate Judge Arleo during the status conference on Wednesday, July 13 (which was conducted telephonically), during which counsel for Glen Ridge SurgiCenter stated their intention to file this motion for leave to amend the complaint to designate a new representative plaintiff in Glen Ridge SurgiCenter's stead.  Magistrate Judge Arleo instructed the parties to advise as to the status of the settlement on a conference call to be conducted at 4:00 p.m. the next day, Thursday, July 14.

Meanwhile, Horizon's arm-twisting of Glen Ridge SurgiCenter continues.  Late on Wednesday afternoon, July 13, Mr. Reese told Mr. Smith that unless the settlement documents are executed before the Court's conference call at 4:00 p.m. the next day, there will be no participating provider agreement between Horizon and Glen Ridge SurgiCenter.  See id. ¶ 9.[2]

---

[2] Horizon is insisting that Glen Ridge SurgiCenter execute the settlement documents (including a participating provider agreement) before the conference call with this Court on the afternoon of Thursday, July 14, despite the fact that Glen Ridge SurgiCenter's attorneys received drafts of the settlement documents (at the earliest) only three days before, on Monday, July 11.  This demand would prevent Glen Ridge SurgiCenter's counsel from engaging in the normal lawyering that would accompany any participating provider contract.  Among the issues that need to be addressed through such a normal lawyering process are questions that could directly impact whether Glen Ridge SurgiCenter's mere execution of the settlement documents would indeed moot Glen Ridge SurgiCenter's claims in this litigation.  For example, although Horizon's draft release purports to become effective upon the execution of the participating provider agreement, Horizon has indicated that Horizon will not sign the participating provider agreement until after a credentialing process is successfully completed.

## ARGUMENT

This Court should grant to the Plaintiffs leave to amend their complaint to substitute North Jersey Ambulatory Surgery Center as the representative plaintiff, in the stead of Glen Ridge SurgiCenter.   Despite the pending settlement of Glen Ridge SurgiCenter's individual claims, Horizon's conduct in "picking off" the representative plaintiff falls within a recognized exception to the mootness doctrine that allows a new representative plaintiff to be named.

**A.**      **The Weiss Exception to the Mootness Doctrine in the Class Action Context**

As Horizon will certainly point out, the "general rule" in class action litigation is that "when claims of the named plaintiffs become moot before class certification, dismissal of the action is required." Lusardi v. Xerox Corp., 975 F.2d 964, 974 (3rd Cir. 1992).  Yet even Lusardi concedes that "[s]pecial mootness rules apply in the class action context, where the named plaintiff purports to represent an interest that extends beyond his own." Id.  The United States Court of Appeals for the Third Circuit recognizes a critical exception to the general rule, one that is directly applicable to this case.  In Weiss v. Regal Collections, 385 F.3d. 337 (3rd Cir. 2004), the defendant responded to the class action complaint by making an offer of judgment to the representative plaintiff that would fully satisfy the representative plaintiff's individual claims. The defendant argued that under traditional mootness principles, its offer for the entirety of the representative plaintiff's individual claim would moot that claim, and thus end the litigation. The Court of Appeals, however, held that it was not appropriate for the defendant to attempt to end the class action litigation by "pick[ing] off named plaintiffs by mooting their private individual claims." Weiss, 385 F.3d. at 343. As authority for this conclusion, the Court of Appeals in Weiss quoted Chief Justice Warren Burger's opinion in Deposit Guar. Nat'l Bank v.

Roper, 445 U.S. 326, 339 (1980), which similarly involved a defendant's attempt to end a class

action litigation through an offer of judgment to the representative plaintiff, as follows:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be
> "picked off" by a defendant's tender of judgment before an affirmative ruling on
> class certification could be obtained, obviously would frustrate the objectives of
> class actions; moreover it would invite waste of judicial resources by stimulating
> successive suits brought by others claiming aggrievement.

Applying Chief Justice Burger's analysis from Roper, the court in Weiss observed that

the mootness doctrine "recognizes that, in certain circumstances, to give effect to Rule 23

[governing class actions], it is necessary to conceive of the named plaintiff as a part of an

indivisible class and not merely a single adverse party **even before the class certification**

**question has been decided**."   Weiss, 385 F.3d. at 347 (emphasis added).   Noting that the

defendant's "tactic of picking off" the representative plaintiff "may deprive a representative

plaintiff of the opportunity to timely bring a class certification motion," the court in Weiss

applied the doctrine of "relation back" to allow the class action litigation to continue, by

allowing the representative plaintiff to file a motion for class certification that related back to the

time before the representative plaintiff's claims otherwise became moot. Id. at 347-48.[3]

This holding is not restricted to the specific means by which the defendant in Weiss

"picked off" the representative plaintiff in that case, namely, an offer of judgment under Rule 68

of the Federal Rules of Civil Procedure.   Rather, relying upon the rationale of Weiss, courts have

expanded the recognized exceptions to the mootness doctrine in the class action context to

include not only the traditional exceptions in which a "a class has already been certified" or "a

---

[3] During the telephonic status conference on Wednesday, July 13, Magistrate Judge Arleo cited Brown v. Phila.
Hous. Auth., 350 F.3d 338 (3rd Cir. 2003), as a possible authority for the proposition that under the mootness
doctrine, the settlement of Glen Ridge SurgiCenter's individual claims before class certification would end this class
action litigation.   The Third Circuit Court of Appeals in Weiss explicitly distinguished Brown by observing that the
claims of the named plaintiffs in Brown became moot due to factual developments that impacted the representative
nature of the named plaintiffs' claims.   That is a wholly different reason for mootness than the defendant's "picking
off" of the representative plaintiff, which was the underlying rationale of Weiss that is applicable to this case.

motion for class certification is pending," but generally situations in which "the plaintiff has not yet had a reasonable opportunity to move for class certification." In re Nat'l Austl. Bank Secs. Litig., No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94163 at *8-*9 (S.D.N.Y. Nov. 8, 2006) (allowing the substitution of a new representative plaintiff when the original representative plaintiffs' claims were mooted due to dismissal over damages issues).

**B.    Glen Ridge SurgiCenter's Circumstances Warrant Application of Weiss**

The circumstances of Horizon's pending settlement with Glen Ridge SurgiCenter cry out for this Court to apply the Weiss doctrine to allow the substitution of a new representative plaintiff despite Glen Ridge SurgiCenter's individual claims being otherwise mooted. Just as in Weiss, Horizon in this case "picked off" Glen Ridge SurgiCenter from its role as the representative plaintiff by satisfying Glen Ridge SurgiCenter's individual claims. The strong-armed tactics that Horizon employed in the process of so satisfying Glen Ridge SurgiCenter's individual claims particularly warrant application of the Weiss doctrine. Glen Ridge SurgiCenter desired from Horizon nothing more than that which Glen Ridge SurgiCenter has continually desired (and which Horizon denied) since long before the commencement of this class action: status as a participating provider in Horizon's network. See Nagel Cert. Ex. B ¶¶ 2, 3. It was Horizon that thrust upon Glen Ridge SurgiCenter the condition that Glen Ridge SurgiCenter could go in-network only if Glen Ridge SurgiCenter released its claims in this class action. See id. ¶ 5. It cannot be disputed that Horizon's only motive in doing so was the motive that Weiss specifically prohibits, namely, to "pick off" the representative plaintiff in a class action by rendering moot the representative plaintiff's individual claims. This is evidenced by Horizon's not once, but twice, threatening to permanently revoke its offer of participating provider status unless Glen Ridge SurgiCenter executed the settlement documents before status conferences at

which this Court might consider the same issues that are raised in this brief.  See id. ¶¶ 7, 9.
Horizon's blatant abuse of its ability to dispense participating provider status is particularly
improper in light of Horizon's unique, quasi-public status as the sole public health service
corporation that New Jersey's legislature has created pursuant to 17 N.J.S.A. 48E.  Pursuant to
its station as the state's only public health service corporation, Horizon is obligated to build a
network of participating providers based on the health care needs of the community that Horizon
serves, not as a means to enrich Horizon by circumventing class action litigation.

The Plaintiffs anticipate that Horizon will argue that the Weiss doctrine should not be
applied to Glen Ridge SurgiCenter's circumstances because Glen Ridge SurgiCenter accepted
Horizon's settlement, whereas the plaintiff in Weiss purported to refuse the offer of judgment
that the defendant in Weiss had tendered pursuant to Rule 68.  Horizon will certainly point out
that Weiss distinguished Lusardi (the leading case in the Third Circuit for the proposition that the
mootness of the representative plaintiff's individual claims generally ends the class action) by
noting that the representative plaintiffs in Lusardi "voluntarily entered into individual
settlements."  Weiss, 385 F.3d. at 348-49.  This argument fails because the crucial distinction
between Weiss and Lusardi is not that the settlement in Lusardi was voluntary on the part of the
representative plaintiffs.  Rather, as the Weiss court explained, the crucial distinction is that in
Weiss, "the 'picking off' scenarios described by the Supreme Court in Roper are directly
implicated," whereas "[i]n Lusardi they were not."  Id. at 349.  As the Lusardi court itself
conceded, Lusardi "simply was not a case [in which] the class-action defendant successfully
prevented effective resolution of a class certification issue."  Lusardi, 975 F.2d at 983.

In this case, Horizon's blatant attempt to end this class action litigation by satisfying Glen
Ridge SurgiCenter's claims – including Horizon's threats, on two separate occasions, to forever

bar Glen Ridge SurgiCenter from participating provider status unless Glen Ridge SurgiCenter executed settlement documents on the eve of status conferences before this Court – places Horizon's conduct squarely within the "picking off" scenario that underlies Weiss and Roper. Glen Ridge SurgiCenter's situation is similar to Weiss – and dissimilar to Lusardi – because Horizon manipulated events for the sole purpose of avoiding this class action.

That the Weiss doctrine can be applied to cases involving a voluntary settlement is vividly demonstrated by Eckert v. Equitable Life Assurance Soc'y, 227 F.R.D. 60 (E.D.N.Y. 2005) (applying the Weiss doctrine to retain jurisdiction over a class action even though the representative plaintiff's individual claims had been mooted by a voluntary settlement agreement). In Eckert, just as in this case, the defendant insurance company "offered an apparently acceptable settlement to [the representative plaintiff] that was conditioned on a release of his individual claims." Id. at 62. Quoting the Weiss court's concerns about "picking off" representative plaintiffs, id., the court faced the question of whether the representative plaintiff's "settlement of his individual claims mooted the entire action and requires this Court to dismiss this action; or whether a live controversy still exists between the remaining putative class members" and the defendant insurance company. Id. After reviewing cases (including Lusardi and Brown) that discussed the general rule that mootness of the representative plaintiff's individual claims ordinarily ends a class action, the court observed that "simply because Eckert's individual claims have been mooted, it does not necessarily follow, as Equitable argues, that the entire litigation is now moot." Id. at 63. Explicitly relying upon Weiss, the court held that "in situations where a plaintiff has not yet had a reasonable opportunity to file a motion for class certification, namely, where there has been no 'undue delay,' the court retains subject matter jurisdiction." Id. Finding no such undue delay, the court concluded that the class action "was

not mooted by Eckert's acceptance of the [voluntary] settlement." Id. at 64.  The court resolved the mootness issue by allowing a new representative plaintiff to be named.

The emphasis that cases such as Eckert and Nat'l Austl. Bank place on whether the representative plaintiff "had a reasonable opportunity to file a motion for class certification" is directly applicable to this case.  Eckert, 227 F.R.D. at 63.  Here, Glen Ridge SurgiCenter cannot possibly have had a reasonable opportunity to file a motion for class certification because this Court, on May 25, set a schedule for discovery that the Court deemed necessary before the Plaintiffs could file any motion for class certification.  There cannot have been any "undue delay" of the sort that might preclude application of the Weiss doctrine given that the Court had so recently scheduled the filing of a motion for class certification for some time in the future. See Schaake v. Risk Mgmt. Alts., Inc., 203 F.R.D. 108, 111 (S.D.N.Y. 2001) (mootness of the representative plaintiff's individual claims cannot moot a class action "with the class certification motion merely awaiting the relevant discovery and related scheduling orders").

**C.     This Court Should Allow the Substitution of a New Representative Plaintiff**

Applying the Weiss doctrine to this case, this Court should resolve the issue of the potential mootness of representative plaintiff Glen Ridge SurgiCenter's individual claims by allowing another class member (specifically, North Jersey Ambulatory Surgery Center) to serve as representative plaintiff in Glen Ridge SurgiCenter's stead.  Attached as Exhibit A to the accompanying Certification of Bruce H. Nagel is the Plaintiffs' proposed amended complaint, which designates North Jersey Ambulatory Surgery Center as the new representative plaintiff. The Plaintiffs respectfully request that this Court grant this motion before entering any dismissal of this action as a result of the settlement of Glen Ridge SurgiCenter's individual claims, thereby seamlessly continuing this class action in a way that is particularly consistent with Weiss.  See In

re Thornburgh, 869 F.2d 1503, 1510 (D.C. Cir. 1989) (noting that mootness concerns are much more easily resolved when "plaintiffs' counsel have submitted the names of actual persons seeking representative status who allege they have a continuing stake in the case.").

"[C]ourts not only may, but should, respond to the pre-certification mooting of a class representative's claims by permitting substitution of a new class representative." In re Nat'l Austl. Bank Secs. Litig., No. 03 Civ. 6537 (BSJ), 2006 U.S. Dist. LEXIS 94163 at *12 (S.D.N.Y. Nov. 8, 2006) (applying the Weiss doctrine to allow the substitution of a new representative plaintiff when the original representative plaintiffs' claims were mooted); see also 1 Newberg on Class Actions § 2:26 (4th ed. 2006) ("When mootness of the named plaintiff's claims occurs, intervention by absentee members is freely allowed in order to substitute them as class representatives"); Phillips v. Ford Motor Co., 435 F.3d 785, 787 (7th Cir. 2006) (Posner, J.) ("Substitution of unnamed class members for named plaintiffs who fall out of the case because of settlement or other reasons is a common and normally an unexceptionable ('routine') feature of class action litigation both in the federal courts and in the [state] courts.").

As demonstrated in cases such as and Eckert and Nat'l Austl. Bank, supra, allowing the designation of a new representative plaintiff is a means that federal district courts will employ to effectuate the purposes of the Weiss doctrine.  Like the courts in those cases, this Court should resolve the issue of the potential mootness of representative plaintiff Glen Ridge SurgiCenter's individual claims by allowing North Jersey Ambulatory Surgery Center to serve as the representative plaintiff in this class action in Glen Ridge SurgiCenter's stead.

## CONCLUSION

For the foregoing reasons, this Court should grant in its entirety the Plaintiffs' motion to amend the complaint in this class action, in the form attached as Exhibit A to the accompanying Certification of Bruce H. Nagel.

Dated:  July 14, 2011

**NAGEL RICE, LLP**


By:  /s/ Bruce H. Nagel

Bruce H. Nagel (BN-6765)
Robert H. Solomon (RS-4158)
103 Eisenhower Parkway
Roseland, NJ  07068
(973) 618-0400

and

**LAMPF, LIPKIND, PRUPIS & PETIGROW**

Thomas A. Gentile (TG-6939)
Neil L. Prupis (NP-5500)
80 Main Street
West Orange, New Jersey 07052
(973) 325-2100


*Attorneys for Plaintiff*
GLEN RIDGE SURGICENTER, LLC